Eusebio GONZALEZ, Petitioner,

v.

Raymond J. CUNNINGHAM,
Respondent.

No. 08 Civ. 8806(VM).

United States District Court,
S.D. New York.

Nov. 16, 2009.

Eusebio Gonzalez, Woodbourne, NY, pro se.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se petitioner Eusebio Gonzalez ("Gonzalez"), who is currently incarcerated at Woodbourne Correctional Facility in New York ("Woodbourne"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 against Raymond J. Cunningham, Superintendent of Woodbourne ("Respondent"). Gonzalez was convicted in New York State Supreme Court (the "Trial

Court") of Manslaughter in the First Degree, in violation of New York Penal Law § 125.20(1). The Trial Court sentenced Gonzalez to a 150-month term of incarceration. The Appellate Division, First Department ("Appellate Division"), affirmed the conviction on appeal.

In the instant petition, Gonzalez asserts two due process claims as grounds for habeas relief. First, he argues that the evidence adduced at trial by the People of New York (the "State") failed to disprove his justification defense beyond a reasonable doubt. Second, Gonzalez argues that the Trial Court incorrectly instructed the jury with regard to Gonzalez's proffered justification defense and, to the extent the issue was not properly preserved, that he was denied effective assistance of trial counsel. Respondent asserts that Gonzalez's claims are procedurally barred because the Appellate Division refused to review them on independent and adequate state grounds. In the alternative, Respondent argues that Gonzalez's claims, if reviewed, would fail on the merits. For the reasons discussed below, Gonzalez's petition is DENIED.

## I. *BACKGROUND*[1]

### A. *FACTS*

The conviction challenged in this petition arises from an August 17, 2002 episode that resulted in the stabbing death of Alberto Rivera ("Rivera") in East Harlem.

After a night of drinking, Gonzalez and a roommate, Guadencio Martinez Aguilar ("Aguilar"), were involved in an early morning street fight with a group of approximately nine men and one woman allegedly affiliated with a gang known as the "Vagos of 116th Street." While the group attacked Aguilar, Gonzalez ran home to get help. After arming himself with two nine-to-ten inch kitchen knives, Gonzalez returned to the scene to assist Aguilar. The men initially dispersed when Gonzalez, armed with the kitchen knives, returned to the scene.

As Gonzalez tended to Aguilar, the gang returned, threatening to kill Gonzalez while throwing bottles and rocks in his direction. Gonzalez and Aguilar fled separately. A group of attackers knocked Aguilar down and resumed beating him. Gonzalez returned, once again, brandishing a kitchen knife to ward off the attackers. The gang again dispersed. Afraid to turn his back on the attackers again, Gonzalez, from a distance, urged a severely beaten, bloodied and then unconscious Aguilar to run but was uncertain that Aguilar could hear him and thought that he was already dead. Fearing that the gang would return and kill him this time, Gonzalez left the scene and retreated towards his apartment.

As Gonzalez approached his apartment, he came across Rivera. Gonzalez incorrectly thought Rivera was a member of the gang that previously attacked him and Aguilar. After exchanging words across the street, Rivera, unarmed and roughly five feet tall, approached Gonzalez with his hands raised and, according to Gonzalez, threatened to kill him. At that point, Gonzalez stabbed Rivera in the chest,[2] piercing

---

1. The factual and procedural summary is derived from the following documents: Brief of Appellant, *People v. Gonzalez*, 38 A.D.3d 439, 834 N.Y.S.2d 20 (1st Dep't 2007) ("Appellant Brief"); Brief of Respondent, *People v. Gonzalez*, 38 A.D.3d 439, 834 N.Y.S.2d 20 (1st Dep't 2007) ("Appellate Opp."); Gonzalez's Petition Under 28 U.S.C § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated September 21, 2008 ("Habeas Petition"); Respondent's Affidavit in Opposition to the Petition for Writ of Habeas Corpus, dated April 3, 2009 ("Habeas Opp."). Except where specifically referenced, no further citation to these sources will be made.

2. Gonzalez did not dispute that his knife entered Rivera's chest. However, Gonzalez ar-

Rivera's left lung and heart, and fled to his apartment. Rivera died as a result of the stab wound. Autopsy results revealed that Rivera stood five feet tall, weighed 121 pounds, and had a blood alcohol concentration of .16 at the time of death.

After returning home, Gonzalez immediately washed the knife and then fled to Baltimore, where he purchased a one-way plane ticket to return to his native Mexico on August 20, 2002. On August 19, one of Gonzalez's roommates, Concepcion Sanchez ("Sanchez"), reported the killing and Gonzalez's location to the police, leading to Gonzalez's arrest later that day in Baltimore.

On September 6, 2002, a New York County Grand Jury issued an indictment charging Gonzalez with Murder in the Second Degree. Gonzalez's jury trial before the New York Supreme Court began on March 15, 2004.

## B. *PROCEDURAL HISTORY*

### 1. *The Trial*

The State's case against Gonzalez relied heavily on the testimony of Mark Gangadeen ("Gangadeen") and Sanchez. Gangadeen admitted to being a compulsive liar,[3] had a criminal record, and struggled with long-term psychiatric troubles. Gangadeen testified that he was in the neighborhood during the events in question and witnessed the street brawl and the events leading up to Rivera's death. According to Gangadeen, Rivera approached Gonzalez unarmed. After the two men briefly exchanged words, Gonzalez stabbed Rivera.

Gangadeen's story was largely consistent with the description of the circumstances provided by other witnesses, including the general facts recounted by Gonzalez. Sanchez testified that Gonzalez described the events of the night in question to him by telephone. According to Sanchez, Gonzalez admitted to stabbing Rivera after a verbal confrontation. He also asked Sanchez to send his belongings to Baltimore so he could take them to Mexico. Sanchez reported the incident and Gonzalez's whereabouts to CrimeStoppers, which awarded him one thousand dollars for the information. Both men were cross-examined at trial.

At the conclusion of the State's case, Gonzalez argued that the evidence presented was insufficient to convict because there was no proof that Gonzalez intended to cause Rivera's death. Gonzalez did not argue, as he does now, that the evidence was insufficient because the State failed to disprove his justification defense beyond a reasonable doubt and did not move to dismiss the case for legal insufficiency.

On March 24, 2004, the Trial Court held a charge conference. The Trial Court granted Gonzalez's request for a justification charge. The Trial Court read its proposed justification charge to the parties. The Trial Court asked defense counsel if he had any exceptions or requests regarding the justification charge. He did not. On March 29, 2004, the Trial Court delivered its final charge to the jury. The judge instructed the jury as he had proposed during the preceding conference.

gued that Rivera ran into the knife and "sort of pricked himself" and that he had not intended to stab Rivera. *See Appellate Opp.* at 21. The Deputy Chief Medical Examiner for Bronx County testified that Rivera's wounds were not consistent with such a theory.

**3.** Gangadeen's compulsion to lie revealed itself in this case. During his first interview

with the Prosecutor, Gangadeen said he was a graduate of St. Francis Prep in Queens in addition to Columbia Business School. He also said he worked on Wall Street, had been indicted in a federal conspiracy case and had been black-listed by the federal government. In reality, Gangadeen had not graduated from high school, was unemployed and had no past federal indictment relating to a conspiracy.

Defense counsel did not object to the Trial Court's charge. During jury deliberations, the jury requested clarification of the law of justification. In response to this request, the judge provided a supplemental justification charge. Defense counsel again made no objection.

On April 2, 2004, the jury acquitted Gonzalez of Murder in the Second Degree and convicted him of the lesser-included offense of Manslaughter in the First Degree. Judgment was rendered against Gonzalez on July 8, 2004. Gonzalez was sentenced to a 150–month term of incarceration.

### 2. *The Appeal*

Gonzalez appealed the verdict to the Appellate Division, First Department. He raised two arguments on appeal, both alleging due process violations. First, he argued that the prosecution failed to disprove Gonzalez's justification defense beyond a reasonable doubt. Gonzalez argued that he presented sufficient evidence to make out the defense as a matter of law and that the State's case did not disprove that defense beyond a reasonable doubt because it relied on incredible and unreliable testimony. Second, he argued that the Trial Court improperly failed to instruct the jury that: (1) the justification defense applied equally to the defense of a third party, (2) the petitioner had to be able to retreat with complete safety to himself and others; and (3) the duty to retreat did not arise until the point when physical force is used or imminent. In addition, Gonzalez claimed he was denied effective assistance of counsel as a result of his counsel's failure to object to the Trial Court's justification charge.

On March 27, 2007, the Appellate Division affirmed the conviction. The Appellate Division declined to review Gonzalez's claims challenging the sufficiency of the evidence and the justification charge because they were not preserved at trial.

*See People v. Gonzalez,* 38 A.D.3d 439, 834 N.Y.S.2d 20, 21 (1st Dep't 2007). The Appellate Division noted that even in the case of preservation, it would still affirm Gonzalez's conviction on the merits. *See id.* at 21–22. In addition, the court rejected Gonzalez's ineffective assistance claim. *See id.* at 22.

On July 9, 2007, the New York Court of Appeals denied Gonzalez's leave to appeal. *See People v. Gonzalez,* 9 N.Y.3d 865, 840 N.Y.S.2d 895, 872 N.E.2d 1201 (2007).

### 3. *The Habeas Petition*

In his habeas petition, Gonzalez raises the same two issues that he raised in his direct appeal. First, he argues that the prosecution failed to disprove his justification defense beyond a reasonable doubt in violation of his rights under the Fourteenth Amendment's Due Process Clause. Second, he argues that the Trial Court improperly instructed the jury with regard to the justification defense, also in violation of his due process rights. Gonzalez additionally claims he was denied effective assistance of counsel to the extent his objection to the justification charge was not preserved at trial.

## II. *DISCUSSION*

### A. *LEGAL STANDARDS*

#### 1. *Exhaustion*

As an initial matter, the Court is mindful that Gonzalez is proceeding pro se, and that his submissions should thus be held to "less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir. 1993) (*quoting Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Moreover, when a plaintiff brings a case pro se, the Court must construe his pleadings liberally and interpret them "to raise the strongest arguments that they sug-

gest." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (*quoting Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Still, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Boddie v. New York State Div. of Parole,* 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (*quoting Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner in custody pursuant to a judgment of a state trial court is entitled to habeas relief only if he can show that his detention violates the United States Constitution, federal law, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Before seeking federal relief, however, a petitioner must exhaust all available state court remedies. *See id.* § 2254(b)-(c). This standard generally requires that the petitioner "fairly present" his claims to the highest available state court, "setting forth all of the factual and legal allegations he asserts in his federal petition." *Daye v. Attorney Gen.,* 696 F.2d 186, 191–92 (2d Cir.1982) (internal citations omitted).

Both of Gonzalez's habeas claims are exhausted. Each claim was raised in the Appellate Division "in terms so particular as to call to mind a specific right protected by the Constitution." *Id.* at 194. Gonzalez later sought leave to appeal the rejection of his claims to the New York Court of Appeals, the highest available state court, thereby exhausting his state court remedies on each of these claims.

2. *Independent and Adequate State Grounds*

■ A federal court's authority to review a habeas petition also depends on whether the state court adjudicated the petitioner's federal claims on the merits or on state procedural grounds. *See Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). A state court adjudicates a petitioner's federal claims "on the merits" under 28 U.S.C. § 2254(d) when it: (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment. *See Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). A claim resolved on the merits must be finally resolved, with res judicata effect, on substantive rather than procedural grounds. *See id.* at 311; *see also Castillo v. Walsh,* 443 F.Supp.2d 557, 562 (S.D.N.Y. 2006).

To succeed on a habeas petition, the petitioner must show that the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or ... [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)-(2); *see also Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Henry v. Poole,* 409 F.3d 48, 67 (2d Cir.2005). A decision is contrary to Supreme Court precedent if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court precedent]" or "confronts a set of facts that are materially indistinguishable from a [Supreme Court decision] and nevertheless arrives at a [different] result." *Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495. A decision involves an unreasonable application of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. An unreasonable application is not simply an incorrect application, but "falls somewhere between 'merely erroneous and

unreasonable to all reasonable jurists.'" *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000) (*quoting Francis S: v. Stone,* 221 F.3d 100, 109 (2d Cir.2000)). However, the state court decision need not be "so off the mark as to suggest judicial incompetence" before habeas relief may be granted. *Francis S.,* 221 F.3d at 111.

### 3. *Exceptions To Independent and Adequate State Grounds Doctrine*

■ A claim resolved on independent and adequate state procedural grounds is generally not subject to review on habeas. *See Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). There are limited circumstances where a federal court may conduct a habeas review of claims resolved on state grounds. Federal review is permissible if the petitioner can demonstrate any one of the following circumstances: (1) actual innocence of the crime charged resulting in a "fundamental miscarriage of justice," *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002) (*citing Schlup v. Delo,* 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)); (2) cause for the procedural default resulting in prejudice, *see Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); or (3) that the procedural bar that the state court applied is not adequate, *see Cotto v. Herbert,* 331 F.3d 217, 239 (2d Cir.2003).

■ Grounds that a district court should consider to determine the adequacy of a state procedural bar are: (1) whether the state court actually relied on the alleged procedural violation, and whether compliance with the state rule would have changed the state court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether the petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding

perfect compliance with the rule would serve a legitimate governmental interest (collectively, the "Adequacy Factors"). *See Cotto,* 331 F.3d at 240.

### B. *APPLICATION*

#### 1. *Insufficiency of Evidence*

Gonzalez challenges his conviction on the grounds that the evidence adduced at trial was insufficient to disprove his defense of justification. In his direct appeal, Gonzalez argued that the testimony of the State's key witnesses was incredible and unreliable, and thus insufficient to disprove his legal defense of justification. However, Gonzalez failed to preserve this challenge at trial, *see Gonzalez,* 834 N.Y.S.2d at 21, and offers no cause for this procedural default, nor does he assert actual innocence.

#### a. *The Claim Is Procedurally Barred*

■ The Appellate Division found that Gonzalez did not preserve his legal insufficiency challenge. *See id.* A determination that a claim is unpreserved is a sufficient indication that the state court denied the claim based on state procedural grounds. *See Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005). Although the Appellate Division additionally found that Gonzalez's claims, if reviewed, would be unpersuasive, the alternative ruling on the merits does not remove the procedural bar created by the independent and adequate state ruling. *See Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."); *see also Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Green,* 414 F.3d at 294. Therefore, the

Appellate Division's determination that Gonzalez failed to preserve objections to the sufficiency of the evidence reflected a reliance on an independent state procedural rule, despite its alternative ruling on the merits. *See Harris,* 489 U.S. at 264 n. 10, 109 S.Ct. 1038.

The record is unclear as to the grounds upon which the Appellate Division relied in determining that the objections to the sufficiency of the evidence were unpreserved, but it is likely that the Appellate Division relied upon New York's contemporaneous objection rule, C.P.L. § 470.05(2). *See Dunn v. Sears,* 561 F.Supp.2d 444, 454 (S.D.N.Y.2008) (finding state court ruling that challenge was unpreserved likely relied on contemporaneous objection rule); *Rosario v. Burge,* 542 F.Supp.2d 328, 337 (S.D.N.Y.2008) (same). This rule would bar Gonzalez's claims because a party must make a specific protest at the time of a claimed error to preserve an issue for appellate review. *See, e.g., People v. Hardy,* 4 N.Y.3d 192, 791 N.Y.S.2d 513, 517 n. 3, 824 N.E.2d 953 (2005); *People v. Gray,* 86 N.Y.2d 10, 629 N.Y.S.2d 173, 175, 652 N.E.2d 919 (1995). The Second Circuit recognizes New York's contemporaneous objection rule as an independent and adequate state procedural rule barring habeas review. *See, e.g., Richardson v. Greene,* 497 F.3d 212, 218 (2d Cir.2007); *Felder v. Goord,* 564 F.Supp.2d 201, 223 (S.D.N.Y. 2008).

None of the exceptions to the independent and adequate state ground doctrine apply here. First, the independent state grounds relied upon are clearly adequate under Second Circuit precedent. Second, Gonzalez cannot demonstrate either cause for, or actual prejudice resulting from, his failure to preserve the legal insufficiency claim. Gonzalez has not asserted, and the record does not reflect, anything that impeded him from preserving this claim. Finally, Gonzalez has not demonstrated that

a failure to consider the insufficiency claim will result in a miscarriage of justice. Accordingly, the Court concludes that Gonzalez's insufficiency claim is procedurally barred.

### b. *The Claim is Meritless*

█ Even assuming, however, that Gonzalez's insufficiency claim were properly preserved, the Court would still deny it on the merits. To determine the legal sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, all possible inferences that may be drawn from the evidence must be construed in the prosecution's favor. *See Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996) (*citing United States v. Rosa,* 11 F.3d 315, 337 (2d Cir.1993)). Finally, "assessments of the weight of evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal." *Id.*

Given the facts adduced at trial, Gonzalez has not demonstrated that there was insufficient evidence to disprove whatever justification defense he may have had. Gonzalez's argument regarding the unreliability of the State's key witness testimony is the type of assessment that is not for this Court to make because it necessarily rests on questions of credibility and weight of the evidence, and therefore is a matter solely within the purview of the jury. Thus, Gonzalez's specific argument in support of his insufficiency claim is not reviewable in a habeas proceeding.

█ A rational trier of fact could have found that the stabbing was not justifiable either in self-defense or in defense of Aguilar based on the factual circumstances.

The testimony of Gangadeen and Sanchez was largely consistent with the testimony of defense witnesses, including Gonzalez. Furthermore, numerous witnesses testified that they saw Gonzalez stab Rivera. At the time of the stabbing Rivera was unarmed and had not attacked Gonzalez. In addition, the earlier street fight had passed and Gonzalez thought his friend, Aguilar (who was not at the scene of the homicide), was already dead. Gonzalez has thus failed to establish that the state court ruling was "an unreasonable application" of "clearly established federal law" or an "unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(1)-(2). Accordingly, Gonzalez's claim for relief challenging the legal sufficiency of the State's case is denied.

## 2. *Erroneous Justification Charge*

Gonzalez also contests his conviction on the grounds that the Trial Court erroneously instructed the jury with regard to his justification defense. Specifically, Gonzalez asserts that the Trial Court failed to instruct the jury that: (1) the justification defense applied equally to the defense of third parties; (2) the duty to retreat did not arise until the point when physical force is used or imminent; and (3) the petitioner had to be able to retreat with complete safety to himself and others. Although Gonzalez failed to preserve these challenges to the Trial Court's charge, *see Gonzalez,* 834 N.Y.S.2d at 20, Gonzalez asserts that ineffective assistance of counsel is the cause of his procedural default.

### a. *The Claim Is Procedurally Barred*

 The Appellate Division found that Gonzalez did not preserve his challenge to the Trial Court's justification charge and noted that, even in the case of preservation, it would find Gonzalez's·claims meritless on review. *See id.* at 21. In so holding, the Appellate Division likely relied on New York's Contemporaneous Objec-

tion Rule. *See* C.P.L. § 470.05(2). As discussed above in relation to Gonzalez's first claim for habeas relief, the Second Circuit recognizes New York's Contemporaneous Objection Rule as an "independent and adequate state ground" that procedurally bars habeas review. *See Greene,* 497 F.3d at 218. Furthermore, the Appellate Division's alternative ruling on the merits does not undermine the procedural bar imposed by that court's reliance on Gonzalez's procedural default. *See Harris,* 489 U.S. at 264 n. 10, 109 S.Ct. 1038; *Green,* 414 F.3d at 294. The habeas claim challenging the Trial Court's justification charge is thus procedurally barred unless Gonzalez can show cause for the procedural default resulting in prejudice.

### b. *Ineffective Assistance of Counsel*

 Gonzales asserts ineffective assistance of trial counsel as cause of his procedural default. To prove ineffective assistance of counsel, Gonzalez must show that: (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness measured by prevailing professional norms; and (2) a reasonable probability existed that, but for counsel's deficient performance, the outcome of the trial would have been different or the defect in counsel's performance deprived Gonzalez of a trial whose result is reliable. *See Strickland v. Washington,* 466 U.S. 668, 687–95, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An attorney's performance is not deficient, and thus not ineffective, for failing to advance a meritless claim. *See United States v. Kirsh,* 54 F.3d 1062, 1071 (2d Cir.1995); *Quail v. Farrell,* 550 F.Supp.2d 470, 476 (S.D.N.Y. 2008).

 The Court notes at the outset that "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions." *Estelle v.*

*McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). To be cognizable on habeas, a challenge to a jury charge must show not only that it is erroneous, but that it violates a federal right. *See United States ex rel. Smith v. Montanye,* 505 F.2d 1355, 1359 (2d Cir.1974). For an erroneous jury charge to violate a federal right, "it must be established not merely that the instruction is undesirable or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Davis v. Strack,* 270 F.3d 111, 123 (2d Cir.2001) (*quoting Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). As a result, the relevant inquiry is not whether the trial court gave a faulty instruction, but whether the faulty instruction "so infected the entire trial that the resulting conviction violates due process." *Blazic v. Henderson,* 900 F.2d 534, 541 (2d Cir. 1990).

The Second Circuit has held that the erroneous deprivation of a jury instruction to which the defendant is entitled under state law can give rise to a due process violation. *See Davis,* 270 F.3d at 123–24 (granting habeas relief to petitioner who was erroneously refused a justification charge in its entirety). However, in this case "an instruction was given and the dispute concerns only what state law required as to its contents." *DiGuglielmo v. Smith,* 366 F.3d 130, 137 (2d Cir.2004). Whether an instruction on the defense of third parties should be included in a justification charge is a dispute over the contents of the charge, which is a matter of state law; it is not a dispute over whether the defendant was refused a charge to which he was entitled. *See id.* at 134, 136–37 (declining to review petitioner's state law claim that court wrongfully refused to issue justification charge relating to the defense of third parties).

The Appellate Division ruled that even if it had reviewed the justification charge on the merits, it would have rejected the claim because the charge "taken as a whole, properly apprised the jury of the rules to be applied" under New York state law. *See Gonzalez,* 834 N.Y.S.2d at 21–22. This Court is "not empowered to second-guess that ruling." *DiGuglielmo,* 366 F.3d at 137; *see also Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (holding that state courts are "the ultimate expositors of state law"); *Johnson v. Rosemeyer,* 117 F.3d 104, 111 (3d Cir.1997) (noting that alleged "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause").[4] Gonzalez has not shown that the Trial Court's instructions "deprived him of any defense to which he was entitled under federal law" and thus has not established a proper basis for federal habeas relief. *DiGuglielmo,* 366 F.3d at 137. Accordingly, the Court finds that Gonzalez's challenge to the Trial Court's justification charge is meritless.

On this basis, Gonzalez's trial counsel was not deficient for failing to preserve the objection and Gonzalez has not established ineffective assistance of trial counsel as cause for his procedural default. Because Gonzalez is unable to show cause for the

4. Even if the Court were to review the state court ruling on the contents of the given justification charge, it would also find Gonzalez's claims meritless. Gonzalez was not entitled to a charge relating to the defense of others because there were no other parties to defend at the time of the stabbing. Aguilar was not at the scene and Gonzalez testified that he believed that Aguilar was already dead. In addition, the charge did not misrepresent the duty to retreat. The judge instructed the jury that the duty arose only "if [the defendant] knows that he can, with complete safety to himself, avoid the necessity of using deadly physical force by retreating." *Gonzalez,* 834 N.Y.S.2d at 21.

procedural default, the Court need not consider whether "actual prejudice" has resulted. *See McCleskey v. Zant,* 499 U.S. 467, 502, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).[5] Since none of the exceptions allowing federal habeas review of claims resolved on independent state grounds are present, Gonzalez's claim challenging the justification charge is procedurally barred. Accordingly, Gonzalez's second claim for habeas relief is denied.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the petition dated September 21, 2008 of Petitioner Eusebio Gonzalez ("Gonzalez") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

As Gonzalez has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.2000).

The Clerk of Court is directed to close this case.

**SO ORDERED.**

---

**5.** Although the Court is not required to address whether "actual prejudice" exists in this case, the Court notes that no "actual prejudice" resulted from Gonzalez's failure to preserve the claim because the Appellate Division alternatively rejected the improper justification charge claim on the merits.